**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| MASRIZAL, individually and as personal representative of the estate of FAISAL RAHMAN,<br><br>             Plaintiff,<br><br>    v.<br><br>THE BOEING COMPANY, a corporation,<br><br>             Defendant. | No. 1:23-cv-00483<br><br>Honorable Claude M. Hilton |

**DEFENDANT THE BOEING COMPANY'S ANSWER
TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

Now comes Defendant, The Boeing Company ("Boeing"), by its counsel, Perkins Coie LLP and McGuireWoods LLP, to answer the Complaint ("Complaint") of Masrizal, individually and as Personal Representative of the estate of Faisal Rahman ("Plaintiff"). Boeing answers in paragraphs numbered to correspond to the paragraph numbers in the Complaint. All facts not specifically admitted are denied.

**OVERVIEW**

1.      On January 9, 2021, Sriwijaya Air Flight 182, a Boeing Model 737-500 aircraft (the "Subject Aircraft"), registration number PK-CLC, crashed into the Java Sea off the Thousand Islands region in the Republic of Indonesia. The crash killed all 62 persons on board, including Decedent.

**ANSWER:**      Boeing admits that on January 9, 2021, a Boeing 737-500 aircraft registered as PK-CLC ("Subject Aircraft"), which was being operated by Sriwijaya Air as flight SJY182, crashed into the Java Sea and that all 62 people on board died. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies them.

2.      Plaintiff is the personal representative of Decedent's estate. Specifically, Plaintiff is Decedent's father. Plaintiff brings this action under the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., to recover compensatory and punitive damages from Boeing, which caused the death of his loved one.

**ANSWER:**   Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the relationship between Masrizal and decedent Faisal Rahman, and therefore denies them. The remaining allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the remaining allegations in this paragraph.

3.      Decedent Faisal Rahman, at the time of his death, was traveling to Pontianak with his brother, Decedent Asy Habul Yamin. Decedent Rahman was an entrepreneur who owned a fashion retail business, an online content creator with 10,000 subscribers on his YouTube channel and 31,000 followers on his Instagram channel, and also produced music as a professional pianist and guitarist. At the time of his death, Decedent Rahman was thirty years old. As a result of his untimely death, he left behind his loving parents.

**ANSWER:**   Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them

4.      It is hereby alleged that Boeing caused Decedent's untimely and horrific death because Boeing defectively designed, manufactured, and/or otherwise maintained a Boeing 737-500 aircraft that was not airworthy at the time it was operated by Sriwijaya Air on January 9, 2021 as Sriwijaya Air Flight SJ 182.

**ANSWER:**   Boeing denies the allegations in this paragraph.

5.      It is further alleged that the Boeing 737 line of aircraft have been plagued with design decisions and manufacturing decisions which reflect what appear to be a historic pattern of Boeing misconduct, and which reflect an ingrained overemphasis on corporate profit over personal safety. Indeed, for the past several decades, as was only revealed through the catastrophic losses of two 737 Max planes with total fatality crashes, Boeing is alleged to have committed multiple acts of corporate malfeasance by making improper decisions, at the expense of safety, in the design, manufacture, assembly, maintenance, and/or provision of defective information relating to the operation and maintenance of its aircrafts. Indeed, the recent Boeing 737-MAX crashes in 2018 and 2019 unearthed many of Boeing's allegedly inherently dangerous, longstanding dangerous design and manufacturing practices, leading the United States Department of Justice to criminally prosecute Boeing for defrauding the Federal Aviation Administration (the "FAA") in the Boeing 737-MAX certification process by allegedly concealing the existence and/or defective nature of the MCAS software system that was the root cause of both the Lion Air Flight JT610 and Ethiopian Airlines Flight ET 302 crashes. Given the extent of other alleged technical defects and issues encountered in Boeing's other aircraft models over the years, Plaintiff now alleges that Boeing's disregard for safety in order to chase profit is an endemic culture within the company, and therefore it is likely that similar defects borne of a similar disregard for safety were present in the Subject Aircraft.

**ANSWER:**   Boeing admits only that it executed a deferred prosecution agreement with the U.S. Department of Justice, Criminal Division, Fraud Section, and the U.S. Attorney's Office

for the Northern District of Texas, which includes a Statement of Facts ("the DPA"), on January 6, 2021, and that the facts recited in the DPA's Statement of Facts are true. The DPA speaks for itself. Boeing denies the statements and characterizations in this paragraph to the extent they are inconsistent with the DPA. Boeing denies the remaining allegations in this paragraph.

6.     Plaintiff seeks to recover for the grievous harm caused by Boeing's alleged decision-making and to punish such corporate conduct in the hopes of preventing future tragedy.

**ANSWER:**   This paragraph contains statements regarding Plaintiff's intent to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

## THE PARTIES

7.     At all relevant times, Decedent was an individual residing in Indonesia, and was a citizen of the Republic of Indonesia.

**ANSWER:**   Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

8.     Plaintiff is a citizen of Indonesia and is the duly appointed personal representative of the estate of the Decedent, and the legally appointed guardian of the minor child A.M.T.

**ANSWER:**   Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them.

9.     At all relevant times, Boeing was and is a corporation organized under the laws of Delaware that is domiciled in, a resident of, and has its principal place of business in Cook County, Illinois.

**ANSWER:**   Boeing admits only that it is a Delaware corporation with its headquarters in Arlington, Virginia. The allegations of principal place of business, domicile, and residency are legal conclusions to which no response is required. To the extent a response is required, Boeing denies the allegations.

10.     At all relevant times, Boeing was engaged in the business of manufacturing, designing, assembling, maintaining, inspecting, testing, servicing, marketing, advertising, leasing, and distributing commercial aircrafts and their component parts, including the Subject Aircraft.

**ANSWER:**   Boeing admits that it designs, manufactures, assembles, inspects, tests, markets, and sells aircraft, except for those components, parts, and systems that are designed, manufactured, assembled, inspected, tested, marketed, or sold by others, and the components, parts, and systems that are subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing further admits that it designed, manufactured, assembled, inspected, tested, marketed, and sold the Subject Aircraft, except for those components, parts, and systems of the Subject Aircraft that were designed, manufactured, assembled, inspected, tested, marketed, or sold by others, and the components, parts, and systems that were subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing denies the remaining allegations in this paragraph.

## GENERAL ALLEGATIONS

I.   **Boeing's Fall from Grace with the 737-MAX Crashes Reveals a Historic and Reckless Disregard of Basic Aircraft Safety Relevant to The Crash of the Subject Aircraft.**

**ANSWER:**   Boeing denies the allegations in this heading.

11.   Throughout most of its history, Boeing has claimed to manufacture the most advanced commercial aircrafts of its time, with the highest safety standards. However, the October 29, 2018 Lion Air Flight JT610 crash, and the March 10, 2019 Ethiopian Airlines Flight ET 302 crash would reveal a shocking saga of what appears to be allegedly illegal and allegedly criminal conduct in connection with aviation design and manufacturing. These two consecutive crashes led to the unprecedented global grounding of the entire Boeing 737-MAX fleet for an extended indefinite period of time before the 737-MAX line was deemed flightworthy again.

**ANSWER:**   Boeing admits that on October 29, 2018, a 737 MAX 8 being operated as Lion Air flight JT610 crashed. Boeing also admits that on March 10, 2019, a 737 MAX 8 being operated as Ethiopian Airlines flight ET302 crashed. Boeing admits that regulators in the U.S. and other countries issued operational restrictions on 737 MAX 8 and 9 aircraft after the crash of flight ET302. The U.S. lifted these operational restrictions in November 2020 and other regulators have subsequently lifted operational restrictions. Boeing also admits that it executed a deferred prosecution agreement with the U.S. Department of Justice, Criminal Division, Fraud Section, and the U.S. Attorney's Office for the Northern District of Texas, which includes a Statement of Facts ("the DPA"), on January 6, 2021, and that the facts recited in the DPA's Statement of Facts are

true. The DPA speaks for itself. Boeing denies the statements and characterizations in this paragraph to the extent they are inconsistent with the DPA. Boeing denies the remaining allegations in this paragraph.

12.     In an attempt to deflect blame and public scrutiny to the Lion Air crash, as they had done in past crashes and would ultimately do here in connection with the crash of the Subject Aircraft, Boeing initially blamed the Lion Air flight crew as being incompetent and not trained to handle the specific emergency situation at issue. It was later discovered that Boeing did not disclose the existence of its MCAS software system that malfunctioned during flight - the same system which caused the aircraft in the Lion Air crash to pull its nose down multiple times while the pilots were desperately trying to fight the software without knowing the existence of such software (and its malfunction).

**ANSWER:**     Boeing admits that MCAS activated on Lion Air flight JT610 in response to erroneous AOA input. Boeing also admits that it executed a deferred prosecution agreement with the U.S. Department of Justice, Criminal Division, Fraud Section, and the U.S. Attorney's Office for the Northern District of Texas, which includes a Statement of Facts ("the DPA"), on January 6, 2021, and that the facts recited in the DPA's Statement of Facts are true. The DPA speaks for itself. Boeing denies the statements and characterizations in this paragraph to the extent they are inconsistent with the DPA. Boeing denies the remaining allegations this paragraph.

13.     By the time the second 737-MAX crash occurred on March 10, 2019, the ET302 pilots had awareness of the MCAS system, and the pilots were even following the seemingly appropriate procedures set by Boeing to supposedly address what Boeing insisted was still largely a training issue. However, despite the pilots' best efforts, they were unable to overcome the MCAS malfunction and the plane crashed in Bishoftu, Ethiopia, killing everyone on board. In the months following the two 737-MAX crashes, there was intense public scrutiny on Boeing to find answers why the two crashes happened. It was later revealed that in Boeing's quest for maximum profitability, Boeing allegedly had historically and regularly committed corporate malfeasance and often times allegedly cut corners in order to maximize profitability of its commercial aircraft business. Boeing is alleged to have defrauded the United States FAA during the 737-MAX certification process, falsely claiming that the 737-MAX was an upgrade to the 737-series that would bypass the full recertification process from FAA, allowing Boeing to sell and deploy the 737-MAX faster in order to stay competitive with its primary competitor Airbus. As a result of this alleged fraud, the FAA was unaware of the existence of the MCAS system at the time it issued the 737-MAX certification.

**ANSWER:**     Boeing admits that a 737 MAX 8 being operated as Ethiopian Airlines flight 302 crashed on March 10, 2019. Boeing also admits that MCAS activated on Ethiopian Airlines flight 302 in response to erroneous AOA input. Boeing also admits that it executed a deferred prosecution agreement with the U.S. Department of Justice, Criminal Division, Fraud Section, and

the U.S. Attorney's Office for the Northern District of Texas, which includes a Statement of Facts ("the DPA"), on January 6, 2021, and that the facts recited in the DPA's Statement of Facts are true. The DPA speaks for itself. Boeing denies the statements and characterizations in this paragraph to the extent they are inconsistent with the DPA. Boeing denies the remaining allegations in this paragraph.

14.     In January 2021, the United States Department of Justice announced a Deferred Prosecution Agreement (the "DPA") with Boeing, in which Boeing agreed to pay over $2.5 Billion dollars to resolve a criminal charge related to an alleged conspiracy to defraud the Federal Aviation Administration (the "FAA") in connection with the FAA's certification of the Boeing 737-MAX aircrafts.

**ANSWER:**     Boeing admits that it entered into the DPA with the U.S. Department of Justice, Fraud Section on January 6, 2021, and that the facts recited in the DPA's Statement of Facts are true. The DPA speaks for itself. Boeing denies the statements and characterizations in this paragraph to the extent they are inconsistent with the DPA. Boeing denies the remaining allegations in this paragraph.

15.     Even prior to the 737-MAX scandal, Boeing had a history of blaming what appeared and were alleged to be obvious negligence in design, engineering, and manufacturing of its aircrafts on supposed primary causes involving pilot or third-party human errors, including pilot and maintenance errors, to avoid liability. For example:

a.     **The Boeing 747 Cargo Door incident:** It is alleged that Boeing negligently designed and manufactured Boeing 747 Cargo doors that caused cargo door locks on certain aircraft to fail during flight, which ultimately killed nine passengers in United Airlines Flight 811[1] on February 24, 1989. This incident was predated by Pan Am Flight 125 in 1987, outbound from London Heathrow Airport, where the aircraft encountered cabin pressurization issues at 20,000 feet and managed to turn around and land safely at Heathrow Airport. An inspection of the aircraft later found that the cargo door's locks were found to be either damaged or entirely sheared off. This was a significant incident because the NTSB initially issued a report attributing the fault to the ground maintenance crew, but later issued a revised United Airlines Flight 811 accident report that determined the probable cause of the accident was the sudden opening of the cargo door as a result of alleged improper wiring and alleged deficiencies in the door design (see footnote 1). Indeed, the revised NTSB report further concluded that contributing to the accident was an alleged lack of timely corrective actions by Boeing following the Pan Am Flight 125 incident in 1987.

---

[1] National Transportation Safety Board Aircraft Accident Report – Explosive Decompression – Loss of Cargo Door in Flight United Airlines Flight 811 (URL:
https://www.ntsb.gov/investigations/AccidentReports/Reports/AAR9202.pdf – Last Accessed Dec. 13, 2022).

b.    **Boeing 737 Rudder Issues:** During the 1990s, it is alleged that there were a series of mechanical and design issues affecting the rudder of the Boeing 737 series resulting in multiple accidents, several of them causing fatalities. In at least two separate incidents (US Air Flight 427[2] and United Airlines Flight 585[3]), pilots lost control of their aircrafts due to alleged sudden and unexpected rudder movements, and the resulting crashes killed everyone on board, 157 people in total. The National Transportation Safety Board determined that the incidents were allegedly the result of a design flaw that could result in an uncommanded movement of the aircraft's rudder. In US Air Flight 427, Boeing initially attempted to attribute the cause of the crash to a claim that the pilots inadvertently activated the wrong rudder pedal in reaction to the wake turbulence[4].

**ANSWER:**    Boeing admits that the NTSB issued final reports regarding United Airlines flight 811, US Air flight 427, and United Airlines flight 585. Those reports speak for themselves. Boeing denies the statements and characterizations in this paragraph and its subparts and footnotes to the extent they are inconsistent with the cited final reports. Boeing denies the remaining allegations in this paragraph and its subparts and footnotes.

16.    Against this backdrop of numerous acts of alleged negligence and/or alleged corporate malfeasance, a history of alleged defective designs, and a history of blaming pilots and attributing crashes of its aircraft to purported pilot error, Plaintiff now brings this instant lawsuit against Boeing not only to seek fair and just compensation for the Decedent's wrongful death, but to also shed light on the degree to which the long term effects of Boeing's alleged historic malfeasance revealed in the 737 Max debacle may be far from over and may implicate commercial aircraft models still in the air other than the Boeing 737-MAX that were designed, manufactured, and sold by Boeing during a time when it is alleged to have engaged in similar patterns of misconduct.

**ANSWER:**    This paragraph contains statements regarding Plaintiff's intent to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

## II.    Boeing Designed, Manufactured, Assembled, Maintained, and Sold the Boeing 737-500 Aircraft that was Involved in the Accident

**ANSWER:**    Boeing admits that it designed, manufactured, assembled, and sold the Subject Aircraft, which was being operated by Sriwijaya Air as Flight SJY182 on January 9, 2021,

---

[2] National Transportation Safety Board Aircraft Accident Report – Uncontrolled Descent and Collision With Terrain USAIR Flight 427, Section 3.2 (Probable Cause) (URL:
https://www.ntsb.gov/investigations/AccidentReports/Reports/AAR9901.pdf – Last Accessed Dec. 13, 2022)
[3] National Transportation Safety Board Aircraft Accident Report – Uncontrolled Descent and Collision With Terrain United Airlines Flight 585, Section 3.2 (Probable Cause) (URL:
https://www.ntsb.gov/investigations/AccidentReports/Reports/AAR0101.pdf – last accessed Dec. 13, 2022)
[4] *See* Adair, Bill (2002). The Mystery of Flight 427: Inside a Crash Investigation. ISBN 1-58834-005-8.

except for those components, parts, and systems of the Subject Aircraft that were designed, manufactured, assembled, or sold by others, and the components, parts, and systems that were subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing denies the remaining allegations in this heading.

17.    At a date prior to January 9, 2021, Boeing designed, manufactured, assembled, and sold the Subject Aircraft, a certain Boeing 737-500 aircraft that was ultimately registered as PK-CLC.

**ANSWER:**    Boeing admits that on or before May 31, 1994 (the date the Subject Aircraft was delivered), it designed, manufactured, assembled, and sold the Subject Aircraft, which was being operated by Sriwijaya Air as Flight SJY182 on January 9, 2021, except for those components, parts, and systems of the Subject Aircraft that were designed, manufactured, assembled, or sold by others, and the components, parts, and systems that were subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing denies the remaining allegations in this paragraph.

18.    Boeing also drafted and published various documentation covering and intending to disclose to pilots and others the operations and maintenance of the aircraft, including but not limited to the following: Maintenance Manual, Quick Reference Handbook, and Flight Crew Training Manual. Boeing also published service bulletins from time to time to update airline operators of pertinent information relating to the operation and/or maintenance of the aircrafts (collectively, the "Boeing Documentation").

**ANSWER:**    Boeing admits that it makes available certain technical manuals for the maintenance and operation of the 737-model aircraft, including an Aircraft Maintenance Manual, a Quick Reference Handbook, and a Flight Crew Training Manual. Boeing further admits that it periodically issues service bulletins. Except as expressly admitted, the allegations in this paragraph are too vague and overly broad to permit an answer.

19.    Boeing also designed, manufactured, and operated flight crew training programs, manuals, and training equipment as part of its sale and operation of its Boeing 737-500 aircraft program (collectively, "Boeing Training Materials").

**ANSWER:**   Boeing admits that it makes available certain technical manuals for the operation of the 737-500 model aircraft. Except as expressly admitted, the allegations in this paragraph are too vague and overly broad to permit an answer and Boeing therefore denies them.

20.     After Sriwijaya Air acquired the Subject Aircraft, Boeing regularly provided further after-sale services, instructions, advice, and other services in connection with the maintenance and operation of the accident aircraft, as well as training Sriwijaya Air Flight Crew that operated Boeing aircrafts.

**ANSWER:**   Boeing admits only that, on a date prior to January 9, 2021, it provided to Sriwijaya Air certain technical manuals related to the operation and maintenance of 737-500 model aircraft. Except as expressly admitted, the allegations in this paragraph are too vague and overly broad to permit an answer and Boeing therefore denies them.

21.     At the time that the Subject Aircraft left the custody and control of Boeing, it is hereby alleged that it was defective and unreasonably dangerous in one or more of the following respects as detailed in the Indonesian KNKT Final Report on the Sriwijaya Air SJ 182 crash dated November 11, 2022 ("KNKT Final Report"):

a.     The Subject Aircraft was registered in Indonesia on or around May 2012. Records indicate that there were known issues with Boeing's Auto Throttle ("A/T") system before the accident on January 9, 2021[5].

b.     Prior to the accident, it is alleged that there were also known problems with Boeing's Auto Pilot ("A/P")[6]. KNKT Final Report at p. 127, Section 2.3.

c.     After the January 9, 2021 crash, on February 15, 2021, Boeing issued a Flight Operation Technical Bulletin on Airplane Upset Prevention and Recovery[7], with the clear implication (highly reminiscent of the MCAS bulletin issued on November 6, 2018 after the first 737-MAX crash[8]) that it had to correct its Airplane Upset Prevention and Recovery procedures and protocol as a result of the January 9, 2021 accident.

---

[5] KNKT Final Report at p. 127, Section 2.3.
[6] KNKT Final Report at p. 127, Section 2.3.
[7] KNKT Final Report at p. 144, Section 4.4.
[8] Ostrower, Jon. *Boeing issues 737 Max fleet bulletin on AoA warning after Lion Air crash* (Nov. 7, 2018). The Air Current. URL: https://theaircurrent.com/aviation-safety/boeing-nearing-737-max-fleet-bulletin-on-aoa-warning-after-lion-air-crash/ – last accessed Jan. 1, 2023).

d.  On March 30, 2021, again reminiscent of the 737 MAX post-crash response by Boeing, Boeing issued a Boeing Multi Operator Message (MOM) regarding the Potential for Latent Flap Indication System Wiring Failure and Impacts to the Autothrottle System[9]. Following the issuance of this MOM, the Federal Aviation Administration (FAA) issued Airworthiness Directive AD-2021-08-14, which is alleged to be yet another indication that there were alleged defects in maintenance guides related to the Auto throttle System provided to airline operators, including Sriwijaya Air.[10]

e.  On March 25, 2022, Boeing published a revision to the Maintenance Planning Document (MPD) for the 737-300/737-500 aircraft requiring repetitive inspections on the spoiler and aileron deployment and associated position sensors[11], further reinforcing the notion that the maintenance directives it provided to Sriwijaya Air for the accident aircraft at the time of the crash were likely inadequate and unsafe.

**ANSWER:**   Boeing admits only that the KNKT has issued a final report regarding this accident. That document speaks for itself. Boeing denies the statements and characterizations in this paragraph and its subparts and footnotes to the extent they are inconsistent with the cited final report. Boeing denies the remaining allegations in this paragraph and its subparts and footnotes.

22.   As such, it is alleged that the Subject Aircraft crashed due in substantial part or in whole to inherent defects present in the aircraft that can be attributed to Boeing's defective design, manufacture, assembly, inspection, as well as Boeing's defective aircraft operation and maintenance documentation provided to Sriwijaya Air at the time of the crash.

**ANSWER:**   Boeing denies the allegations in this paragraph.

### III.   The January 9, 2021 Sriwijaya Air SJ 182 Crash

**ANSWER:**   Boeing admits that on January 9, 2021, the Subject Aircraft was being operated by Sriwijaya Air as flight SJY182 from Jakarta, Indonesia to Pontianak, Indonesia and that it crashed into the Java Sea. Boeing denies any other allegations in this heading.

23.   On January 9, 2021, the Subject Aircraft was being operated by Sriwijaya Airlines as Flight SJ 182 from Jakarta, Indonesia to Pontianak, Indonesia (the "Accident Flight"). The Accident Flight was a domestic flight within the boundaries of the Republic of Indonesia and was not conducted over international waters or the high seas. The plane ultimately crashed into the Java Sea, killing all passengers and crew aboard. Plaintiff's husband, Decedent Pipit Piyono, was a passenger on the accident aircraft during the Accident Flight.

---

[9] KNKT Final Report at p. 144, Section 4.4.
[10] Id.
[11] KNKT Final Report at p. 144, Section 4.4.

**ANSWER:**     Boeing admits that on January 9, 2021, the Subject Aircraft was being operated by Sriwijaya Air as flight SJY182 from Jakarta, Indonesia to Pontianak, Indonesia and that it crashed into the Java Sea. Boeing lacks knowledge or information sufficient to form a belief about Plaintiff's allegations regarding his relationship to Pipit Piyono (or the decedent named in this caption) and whether Pipit Piyono (or the decedent named in this caption) was aboard the Subject Aircraft at the time of the crash, and therefore denies them. The remaining allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the remaining allegations in this paragraph.

24.     It is further alleged that as the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the accident aircraft, as well as the defective Boeing Documentation and Boeing Training Materials, the A/T and/or A/P systems and/or other systems designed and/or manufactured by Boeing failed within minutes after the Subject Aircraft took flight and departed the runaway in Jakarta and while it was flying over land. Specifically, it is alleged that the defects in the A/T and/or A/P systems or other systems designed and/or manufactured by Boeing to be determined through further discovery, caused dangerous conditions that would ultimately lead the aircraft to crash on that fateful day. As a result of these alleged defects, it is alleged that the aircraft plummeted into the Java Sea killing all passengers on board.

**ANSWER:**     Boeing denies the allegations in this paragraph.

25.     It is anticipated that Boeing will attempt to blame third parties including pilots for the crash of the Subject Aircraft, and will attempt to move all discovery and fact finding and litigation out of the United States using tactics and conduct it has used in the past to try to argue that Boeing should not be held accountable in the courts of the very jurisdiction from which it does business worldwide and in the courts of the country where it designs and manufactures its planes. On information and belief, it is alleged that Boeing and/or its insurers and/or other third parties working with Boeing and/or its insurers use various tactics including attempting to obtain and/or enforce improper releases to try to set the stage for moving litigation and investigation offshore whenever possible, and have done so historically.

**ANSWER:**     This paragraph contains Plaintiff's predictions of what Boeing will do, to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

## COUNT I

## STRICT PRODUCTS LIABILITY AGAINST BOEING

### (Pursuant to the Illinois Wrongful Death Act, 740 ILCS 1801, et seq.)

26.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:**     Boeing incorporates by reference its responses to Paragraphs 1–25 as if fully set forth herein.

27.     At all relevant times, Boeing did design, manufacture, assemble, inspect, repair, endorse, draft, test, franchise, market, promote, advertise, supply, lease, distribute, and place into the stream of commerce the Subject Aircraft, Boeing Documentation, and Boeing Training Materials.

**ANSWER:**     Boeing admits that on or before May 31, 1994 (the date the Subject Aircraft was delivered), it designed, manufactured, assembled, and sold the Subject Aircraft, which was being operated by Sriwijaya Air as Flight SJY182 on January 9, 2021, except for those components, parts, and systems of the Subject Aircraft that were designed, manufactured, assembled, or sold by others, and the components, parts, and systems that were subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing also admits that, on a date prior to January 9, 2021, it provided to Sriwijaya Air certain technical manuals related to the operation and maintenance of 737-500 model aircraft. Boeing denies the remaining allegations in this paragraph.

28.     At the time the subject aircraft, Boeing Documentation, and Boeing Training Materials left the hands of Boeing, the Subject Aircraft, Boeing Documentation, Boeing Training Materials, and the components alleged above, were defective and unsafe in manufacture, design, drafting, and warnings.

**ANSWER:**     Boeing denies the allegations in this paragraph.

29.     On or about January 9, 2021, Sriwijaya Air and its officers, directors, employees, and/or agents and Decedent were using the subject aircraft in a reasonable and foreseeable manner. Sriwijaya Air and its officers, directors, employees, and/or agents and the Decedent were unaware that said products were unsafe for their intended use. The defective and unsafe conditions of aforesaid products caused the subject aircraft to plummet into an uncontrollable nosedive and crash into the Java Sea. Decedent was killed as a direct and legal result of the defective and unsafe conditions of said products and the component parts thereof.

**ANSWER:**     Boeing denies the allegations in this paragraph.

12

30.     Boeing knew or should have known of the defects in the design and manufacture of the aforesaid products, which constitutes a hazard for those coming into contact with the aforesaid products and the component parts, and Boeing failed to notify, warn, and protect those coming into contact with the aforesaid products, and such failure to warn was one of the legal causes of the incident and death of Decedent.

**ANSWER:**     The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

31.     The aforesaid products failed to perform as safely as an ordinary consumer would have expected when the subject aircraft plummeted into an uncontrollable nosedive and crashed into the sea.

**ANSWER:**     The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

32.     As a direct and legal result of the acts and omissions of Boeing, Decedent's heirs have been deprived of the love, care, society, comfort, assistance, protection, affection, companionship, guidance, solace, services, and support of said Decedent, and have thereby sustained, and will continue to sustain, pecuniary loss in a sum as yet unascertained.

**ANSWER:**     The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

**WHEREFORE**, Plaintiff requests that this Court grant judgment in their favor and against Defendant on Count I and award Plaintiff the following relief:

(1)     Award Plaintiff all compensatory damages available under the law in an amount to be determined at trial;

(2)     Award Plaintiff punitive damages in an amount to be determined at trial;

(3)     Award Plaintiff interest in an amount to be determined by the Court;

(4)     Award Plaintiff court costs in an amount to be determined by the Court; and

(5)     Grant such other relief as this Court deems appropriate and just.

**ANSWER:**     Answering this unnumbered paragraph, Boeing denies that Plaintiff is entitled to any recovery from Boeing whatsoever. Boeing specifically denies that any potentially applicable law permits the recovery of punitive damages.

## COUNT II

## NEGLIGENT PRODUCTS LIABILITY AGAINST BOEING

### (Pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq.)

33.    Plaintiff realleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:**    Boeing incorporates by reference its responses to Paragraphs 1–32 as if fully set forth herein.

34.    At all times herein mentioned, Boeing so negligently, carelessly, recklessly, and with gross negligence, designed, manufactured, assembled, inspected, repaired, maintained, endorsed, drafted, tested, franchised, supplied, sold, leased, distributed, and placed into the stream of commerce the subject aircraft, Boeing Documentation, and Boeing Training Materials, and negligently failed to warn, relative to the said products and the components alleged above, and otherwise so negligently conducted itself, so as to directly and legally cause the injuries and damages described herein to Plaintiff.

**ANSWER:**    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

35.    At all times herein mentioned, Defendant Boeing knew, or in the exercise of reasonable care should have known, that the Subject Aircraft, Boeing Documentation, and Boeing Training Materials, and the components alleged above, were defectively and negligently manufactured, designed, assembled, tested, inspected, fabricated, constructed, distributed, marketed, and sold. Defendant Boeing failed to take reasonable steps to avoid exposing consumers, including Decedent, to the dangerous condition of such products, failed to disclose the products' known defects, failed to warn, failed to recall, failed to provide or send subsequent warnings after distribution to consumers, failed to warn Sriwijaya Air of the A/T and/or A/P issues, and otherwise so negligently conducted itself, so as to directly and legally cause the injuries and damages described herein to Decedent's heirs, including Plaintiff.

**ANSWER:**    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph

36.    On or about January 9, 2021, Sriwijaya Air and its officers, directors, employees, and/or agents and Decedent were using the Subject Aircraft, Boeing Documentation, and Boeing Training Materials in a reasonable and foreseeable manner. Sriwijaya Air and its officers, directors, employees, and/or agents and Decedent were unaware that said products were unsafe for their intended use. The defective and unsafe conditions of the foregoing products caused the subject aircraft to fall into an uncontrollable nosedive and crash into the sea. Decedent was killed as a result of the defective nature of the subject aircraft, Boeing Documentation, and Boeing Training Materials.

**ANSWER:**   The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

37.   Boeing had a duty, as a designer and manufacturer of goods, to manufacture, design, inspect and test the Subject Aircraft, Boeing Documentation, and Boeing Training Materials to ensure they were safe for use by ordinary consumers.

**ANSWER:**   The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing admits that it owed whatever duties are imposed by law and denies the remaining allegations in this paragraph.

38.   From the time the subject aircraft, Boeing Documentation, and Boeing Training Materials were delivered to Sriwijaya Air to the time of the crash, the aforesaid products were only used for their intended purpose and were not modified, upgraded, altered, damaged, or substantially changed in any way.

**ANSWER:**   Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them.

39.   As a direct and legal result of the acts and omissions of Defendant Boeing, Decedent's heirs have been deprived of the love, care, society, comfort, assistance, protection, affection, companionship, guidance, solace, services, and support of said Decedent, and have thereby sustained, and will continue to sustain pecuniary loss in a sum as yet unascertained.

**ANSWER:**   The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, Boeing denies the allegations in this paragraph.

**WHEREFORE**, Plaintiff requests that this Court grant judgment in their favor and against Defendant on Count II and award Plaintiff the following relief:

(1)   Award Plaintiff all compensatory damages available under the law in an amount to be determined at trial;

(2)   Award Plaintiff punitive damages in an amount to be determined at trial;

(3)   Award Plaintiff interest in an amount to be determined by the Court;

(4)   Award Plaintiff court costs in an amount to be determined by the Court; and

(5)   Grant such other relief as this Court deems appropriate and just.

**ANSWER:**  Answering this unnumbered paragraph, Boeing denies that Plaintiff is entitled to any recovery from Boeing whatsoever. Boeing specifically denies that any potentially applicable law permits the recovery of punitive damages.

### AFFIRMATIVE AND OTHER DEFENSES

Boeing alleges the following affirmative and other defenses to Plaintiff's Complaint:

### FIRST DEFENSE

1.      The Complaint and all claims for relief therein should be dismissed on the ground of *forum non conveniens*.

### SECOND DEFENSE

2.      The Illinois (transferor) court lacks personal jurisdiction over Boeing.

### THIRD DEFENSE

3.      The benefits of the design of the Subject Aircraft and each component thereof outweigh the risks associated therewith, if any.

### FOURTH DEFENSE

4.      Boeing complied with all applicable federal, state, and foreign statutes, codes, and administrative regulations existing at the time the Subject Aircraft was manufactured and all applicable standards for design, inspection, testing, warning and manufacture.

### FIFTH DEFENSE

5.      The Subject Aircraft was certified as airworthy by the Federal Aviation Administration and complied with all applicable codes, standards, and regulations of the United States and agencies thereof at the time it was delivered by Boeing.

### SIXTH DEFENSE

6.      The design of the Subject Aircraft and each component thereof that was installed at the time of delivery by Boeing was consistent with or exceeded the "state of the art" at the time of its design and manufacture.

**SEVENTH DEFENSE**

7.      The Subject Aircraft was intended for and sold to a knowledgeable and sophisticated user over whom Boeing had no control or right of control.

**EIGHTH DEFENSE**

8.      The Complaint and all claims for relief therein should be dismissed on the grounds that Plaintiff has failed to join necessary and indispensable parties.

**NINTH DEFENSE**

9.      Plaintiff may lack standing to bring this action or to bring claims arising out of alleged actions or omissions affecting a third-party.

**TENTH DEFENSE**

10.      Actions or omissions of third parties over whom Boeing had no control, which may include but are not limited to any entity that altered, modified, overhauled, or repaired any relevant equipment on the Subject Aircraft, were the sole, direct, and proximate cause of the damages, if any, of Plaintiff.

**ELEVENTH DEFENSE**

11.      Plaintiff's claims may be barred in whole or in part and/or preempted by federal law.

**TWELFTH DEFENSE**

12.      If Plaintiff's damages, if any, were proximately caused by the acts or omissions of others over whom Boeing had no control or right of control, those acts or omissions were a superseding and sole, direct, and proximate cause of Plaintiff's damages, if any.

**THIRTEENTH DEFENSE**

13.      If Plaintiff's decedent was injured by products originally designed, manufactured, assembled, inspected, tested, or sold by Boeing, those products were subsequently installed, removed, exchanged, altered, modified, retrofitted, repaired, overhauled, remanufactured, improperly maintained, or misused by persons and/or entities other than Boeing, and over whom Boeing had no control or right of control, and such installation, removal, change, alteration, repair,

modification, retrofitting, overhauling, remanufacturing, improper maintenance, or misuse proximately caused or contributed to the events alleged in the Complaint and the resulting damages complained of, if any.

## FOURTEENTH DEFENSE

14.     An award or judgment rendered in favor of Plaintiff must be reduced by the amount of benefits Plaintiff received, or is entitled to receive, from any source as a result of this accident.

## FIFTEENTH DEFENSE

15.     Some or all of Plaintiff's claims and available damages may be barred by virtue of prior settlements.

## SIXTEENTH DEFENSE

16.     Plaintiff's Complaint fails to state a claim upon which relief can be granted against Boeing and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any relief whatsoever, from Boeing.

## SEVENTEENTH DEFENSE

17.     Boeing places in issue the negligence, fault, and responsibility of all persons and entities, which may include but are not limited to any entity that operated, altered, modified, overhauled, or repaired the Subject Aircraft or any relevant equipment on the Subject Aircraft, which have contributed in any degree to the injuries and damages alleged to have been sustained by Plaintiff. Judgment against Boeing, if any, should be diminished to an amount that represents Boeing's degree of negligence, fault, or responsibility, if any.

## EIGHTEENTH DEFENSE

18.     Plaintiff's claims are barred by any applicable statute of limitations or repose, including 735 ILCS 5/13-213, if applicable. The subject aircraft was delivered in 1994, more than 12 years before the filing of the Complaint.

## NINETEENTH DEFENSE

19.     Plaintiff's claim for punitive damages is barred or limited by provisions of the United States Constitution, state constitutions, or other applicable law including, without

limitation, proscriptions against double jeopardy and excessive fines and provisions assuring due process of law and equal protections of laws.

## TWENTIETH DEFENSE

20.    Evidence of subsequent remedial measures is not admissible to prove liability. *See* Federal Rule of Evidence 407.

## TWENTY-FIRST DEFENSE

21.    Plaintiff's claims may be barred by virtue of failing to properly identify a personal representative qualified to seek relief on behalf of the Decedent.

## NOTICE OF THE APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION

22.    Pursuant to Federal Rule of Civil Procedure 44.1, Boeing gives notice that it may raise issues concerning the applicability of the law of another jurisdiction, including but not limited to the laws of other states and/or a foreign country or countries, and reserves the right to assert and plead such other claims and defenses available to it arising out of the application of the substantive laws of another jurisdiction.

## RESERVATION OF RIGHTS

23.    Boeing reserves the right to add those affirmative defenses which it deems necessary to its defense or upon conclusion of investigation and discovery. Boeing further reserves the right to assert any additional affirmative defenses allowed by the law of the jurisdiction found to apply in this case.

## PRAYER FOR RELIEF AND DEMAND FOR JUDGEMENT

WHEREFORE, Defendant The Boeing Company prays as follows:

A.    That Plaintiff takes nothing by the Complaint, that the Complaint be dismissed, and that judgment on the Complaint be entered for Boeing;

B.    That Boeing be awarded its costs of suit and attorneys' fees;

C.    That the Court grant such further relief as the Court may deem just and proper.

## JURY DEMAND

To the extent the court determines the applicable law allows for a jury trial (an issue on

which Boeing takes no position at this time), Boeing demands a jury trial of all claims, defenses, counterclaims, cross-claims, and third-party claims, if any, which do not deprive this Court of jurisdiction over the subject matter of any claim or the person of any party.

Dated:  October 16, 2023

By: /s/ *Benjamin L. Hatch*

Benjamin L. Hatch, VA Bar No. 70116
BHatch@mcguirewoods.com
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone: +1.757.640.3700
Facsimile:  +1.757.640.3947

Mack H. Shultz (admitted *pro hac vice*)
MShultz@perkinscoie.com
Perkins Coie LLP
1201 3rd Avenue, Ste 4900
Seattle, WA 98101
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

## **CERTIFICATE OF SERVICE**

I, Benjamin L. Hatch, certify that on October 16, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 16th day of October, 2023.

/s/ *Benjamin L. Hatch*
Benjamin L. Hatch, VA Bar No. 70116
BHatch@mcguirewoods.com
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:     +1.757.640.3700
Facsimile:     +1.757.640.3947